EL PASO ELECTRIC CO. v. SAWYER.*
(No. 1940.)

(Court of Civil Appeals of Texas. El Paso. Jan. 27, 1927. Rehearing Denied Feb. 17, 1927.)

1. Master and servant ⬅356—Electric company held liable for lineman's death, notwithstanding contributory negligence (Rev. St. 1925, art. 8306).

Each of electric company's negligent acts in inserting plug in cut-out box, thus electrifying wires near where lineman was working on pole, leaving exposed live wire in box, and maintaining guy wire without circuit breaker in contact with live wire, being proximate cause of lineman's death, company was liable, under Rev. St. 1925, art. 8306, though deceased was contributorily negligent in not removing idle wire protruding from box.

2. Negligence ⬅61(1)—Each of negligent acts may be proximate cause of injury.

There may be several acts of negligence, each of which is a proximate cause of injury.

3. Negligence ⬅136(25)—Proximate cause of injury is ordinarily question of fact.

It is ordinarily a question of fact as to what negligent act is a proximate cause of an injury.

4. Master and servant ⬅356—Lineman's knowledge of absence of circuit breaker in guy wire in contact with live wire held no defense under statute (Rev. St. 1925, art. 8306).

Lineman's knowledge of absence of circuit breaker in guy wire, negligently maintained by electric company in contact with live wire, would be no defense to action against it for his death proximately caused thereby; common-law defenses of assumed risk and contributory negligence having been abolished by Rev. St. 1925, art. 8306.

5. Master and servant ⬅234(1)—Lineman's knowledge of absence of circuit breaker in guy wire held no defense at common law.

Even at common law, lineman's knowledge of absence of circuit breaker in guy wire, maintained in contact with live wire, would be no defense to action against electric company for his resulting death, in absence of evidence that he knew or had reason to believe that guy wire was in contact with live wire; original negligence being that of defendant in so constructing guy wire.

6. Appeal and error ⬅930(3)—Lineman's knowledge that fellow employee cut wire and left raw end protruding being fact issue was presumably found against defendant in successful death action.

Whether lineman, killed by contact with live wire, knew that fellow employee had cut wire and left raw end protruding from cut-out

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted April 13, 1927.

box on pole being an issue of fact was presumably found against defendant electric company, in action wherein plaintiffs recovered judgment for his death.

**7. Appeal and error ⟐⇒1062(2)—Trial ⟐⇒351 (5), 352(4)—Refusal of issue whether deceased should have foreseen injury by his negligence held not error, in view of evidence, questions submitted, and jury's finding.**

Refusal of defendant's special issue, in action for death of lineman by electrocution, as to whether deceased should have foreseen probable injury as result of his failure to remove old wire from cut-out box on pole, *held* not error, in view of evidence that defendant's negligent acts proximately caused death, other questions on same subject submitted at defendant's request, and jury's finding thereon that such negligence of deceased was not sole proximate cause of injury.

**8. Trial ⟐⇒350(7)—Refusal of issue whether deceased's negligence was "proximate cause" of death, and modification requiring finding whether it was "sole proximate cause," held not error.**

In action for death of lineman by electrocution, refusal to submit question whether deceased's negligence was "proximate cause of death," and modification of such question by insertion of word "sole" before "proximate," *held* not error, in view of evidence that defendant's negligence was proximate cause of injury and fact that proximate cause alone would not constitute defense under statute, though "proximate cause" and "sole proximate cause" mean same thing in law.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Proximate Cause.]

**9. Trial ⟐⇒352(4)—Refusal of charge on assumed risk held not error, in view of statute abolishing defense and jury's answers to submitted grounds of defendant's negligence (Rev. St. 1925, art. 8306).**

Charge on assumed risk *held* properly refused, in action for death of lineman by electrocution, such defense, having been abolished by Rev. St. 1925, art. 8306, and finding for defendant being impossible without contradicting jury's answers to all grounds of defendant's negligence submitted in court's charge.

**10. Trial ⟐⇒352(1)—Submission of questions inviting contradictory answers is not ordinarily necessary or proper.**

It is not ordinarily necessary or proper to submit to jury questions which invite contradictory answers.

**11. Trial ⟐⇒352(1)—Issue of deceased lineman's negligent contact with fuse or cut-out box held properly refused as presenting no defense, and obscure as to whether his negligence was sole proximate cause of death.**

In action for death of lineman by electrocution, refusal to submit issue whether deceased was negligent in permitting knee to come in contact with fuse or cut-out box on pole *held* not error; deceased's negligence being no defense, and charge being obscure as to whether

such negligence was merely proximate cause or sole proximate cause of death.

**12. Trial ⟐⇒352(1)—Court need not give charge or question that is not clear, is liable to confuse, or requires further definition or explanation.**

Court does not have to give a charge or question that is not clear or is liable to confuse, nor one that requires a further definition or explanation.

**13. Master and servant ⟐⇒129(1)—Whether shock before falling on wire in contact with live wire was sufficient to or did cause lineman's death held immaterial.**

Where jury found that defendant electric company's servant was negligent in inserting plug in cut-out box on pole and leaving exposed end of wire therein, and that such acts were proximate causes of fellow lineman's death, in that he received a severe shock thereby before falling on guy wire in contact with live wire, it is immaterial whether such shock was sufficient to cause or did cause death.

**14. Trial ⟐⇒350(5)—Issues whether electric shock was sufficient to cause or probably caused death held properly refused as covering only evidentiary matters.**

Requested issues as to whether shock received by lineman before falling on guy wire in contact with live wire was great enough to cause or probably did cause death *held* properly refused, as covering only evidentiary matters, not ultimate issue whether such shock caused death.

**15. Death ⟐⇒17—Where it is uncertain whether one of two or more wrongful acts caused death, each wrongdoer is liable.**

Where it is uncertain as to whether one of two or more wrongful acts caused death, and each was inflicted on victim while still alive, each wrongdoer is liable, unless possibly it can be shown with absolute certainty that first wrong wholly caused death.

**16. Trial ⟐⇒350(5)—Submission of question whether shocks before falling on wire in contact with live wire solely caused lineman's death held not warranted.**

In action for death of lineman by electrocution, evidence *held* not to warrant submission of question whether shocks received before he fell on guy wire in contact with live wire were sole cause of death.

**17. Trial ⟐⇒232(5)—Charge defining "occasion" in issue of deceased lineman's negligence as comprehending entire work held correct.**

In action for death of lineman by electrocution, court's charge defining term "occasion," in issue whether deceased was negligent on occasion in question, as comprehending entire transaction with reference to performance of entire work, on which deceased was engaged on or about pole at and before time of death, *held* correct.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Occasion.]

**18. Appeal and error** ☞1033(5)—**Charge defining "occasion" in issue of deceased lineman's negligence, as comprehending entire work at and before time of death, held favorable to defendant, which could not complain.**

In action for death of lineman by electrocution, charge defining "occasion," in issue whether deceased was negligent on occasion in question as comprehending entire transaction with reference to performance of entire work of deceased on or about pole at or before time of death, was favorable to defendant, which therefore could not complain thereof.

**19. Master and servant** ☞356—**Deceased lineman's disobedience of rules held no defense under statute (Rev. St. 1925, art. 8306).**

In action for death of lineman by electrocution, refusal to submit issue whether deceased's failure to obey defendant company's rules was negligence proximately causing his death *held* not error, such negligence being no defense, under Rev. St. 1925, art. 8306, as defendant was guilty of negligence proximately contributing to injury.

**20. Master and servant** ☞356—**Lineman's negligence in leaving wire hanging held remote cause of death, or cause concurring with fellow lineman's negligence, constituting no defense (Rev. St. 1925 art. 8306).**

Lineman's negligence in leaving idle wire, covered with insulation and uncharged, hanging from cut-out box on pole, *held* only remote cause of his death, or at most a cause concurring with negligence of fellow lineman in inserting plug in cut-out box on foreman's order and leaving wire protruding therefrom after cutting it, and hence no defense, under Rev. St. 1925, art. 8306, to action for death.

Appeal from District Court, El Paso County; P. R. Price, Judge.

Action by Ethel Sawyer, for herself and Orville Sawyer, a minor, against the El Paso Electric Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Goggin, Hunter & Brown, of El Paso, and Baker, Botts, Parker & Garwood, of Houston, for appellant.

Lea, McGrady, Thomason & Edwards, of El Paso, for appellee.

PELPHREY, C. J. The record in this case is lengthy. The evidence in some respects technical and the facts more complicated than is usual in suits of this nature.

The briefs of counsel for the respective parties are models of clearness, brevity, accuracy, and sufficiency of statement. Excluding the assignment of error copied in the back, appellant's brief covers 33 printed pages; appellee's covers 8 typewritten pages. The brevity thereof has not in anywise detracted from the force and ability with which counsel have presented their respective theories.

This opinion will be almost wholly confined to quotations from the briefs.

Appellant's statement of the nature and result of the suit is adopted as follows:

"This action was instituted in the district court by Ethel Sawyer, in her own behalf and in that of Orville Sawyer, a minor, against El Paso Electric Company, for damages sustained by reason of the death of Arthur P. Sawyer, the husband and father, respectively, of Ethel and Orville Sawyer.

"Arthur P. Sawyer was an electrician, employed by the defendant, and at the time of his death was on one of defendant's power line poles engaged in the work of a lineman installing and adjusting electrical apparatus. The deceased came to his death from an electric shock or shocks. Working with him at the time was another lineman and coemployee, one Joseph W. Watson. Both of these men were experienced linemen and electricians.

"Sawyer and Watson having been required to make certain alterations in the electrical apparatus upon the pole, it became the duty of Sawyer, a new transformer having been installed upon the pole some 12 feet above the ground by Watson and himself, to connect this transformer with a cut-out box already on the pole and which before the installation of the new transformer had been connected in the usual manner by an insulated copper wire known as a primary lead, with the old transformer which had been removed. When the old transformer was removed the primary lead which connected it with the cut-out box was left with one end securely fastened in the cut-out box, the other end dangling. The new transformer when installed upon the pole had already attached to it a new primary lead properly insulated to be inserted in the slot in the cut-out box and there secured by a set screw in lieu of the old wire, which was dangling from the cut-out box. The set screw in the cut-out box should have been loosened, the old copper wire entirely removed, and then the end of the new primary lead from the new transformer to the cut-out box inserted and secured by the set screw.

"It was the deceased Sawyer's duty to do this particular piece of work, but instead of first removing the old wire from the slot in the cut-out box and inserting the end of the new primary lead and fastening it with the set screw, he left the old wire dangling from the slot, inserted the new wire in the slot by its side, and, having set the set screw, left it in that condition. Both the old wire and the new were covered with insulation except on the ends where the insulation had been removed for the purpose of inserting the ends into the transformer and cut-out box. The old wire was bare at both ends—that is to say, the end which was inserted into the slot in the cut-out box and the end left dangling. The loose end extended from the slot about a foot and a half.

"After having done this piece of work Sawyer moved from the westerly, where he had just been working, to the easterly side of the pole, for the purpose of doing some other part of the work or to make room for Watson, and was standing there when his fellow servant Watson, having gotten upon the pole, discovered the old wire dangling. Watson at once called Sawyer's attention to it and asked him why he had left it in that shape. Sawyer replied: 'That was one that got away from me.' While Saw-

yer was standing on one of the cross-arms and looking down at Watson, Watson clipped the dangling wire as close as he could to the slot in the cut-out box. The dangling wire could have been entirely removed by loosening the set screw and readjusting it. Watson, having clipped the wire, put the plug there for that purpose in the cut-out box, thus making the connection and charging the primary lead and other wires, including the small piece of copper wire left in the slot: Watson at the same time called to another workman that the power or current was on, and Sawyer was aware of this fact. Sawyer and Watson were doing the work together. Sawyer should not have left the wire dangling from the cut-out box, but should himself have removed it altogether.

"After Watson had clipped the dangling wire close up to the cut-out box, Sawyer came again to the westerly side where Watson had been and took up his position with his feet on one of the cross-arms and began scraping with his knife the insulation from a secondary wire about level with his head or a little higher, when he brought a knee or some part of his leg into contact with the cut-out box, and presumably with the exposed end of the clipped copper wire in the slot. This caused him to receive one, if not two, successive shocks, and threw him backward in his belt, and his shoulders came into contact with a guy wire attached to the pole. When his shoulders touched the guy wire, though he had released his hold on the secondary wire, his knee or other part of his leg being still in contact with the clipped copper wire, he received one or more additional shocks, for the guy wire was in contact with a ground wire without a circuit breaker between this contact and the pole on which the deceased was standing.

"It was the duty of Sawyer to have removed the old wire from the slot. Had he removed it at the time he inserted the new primary lead he would not have been killed or injured. If Watson had removed the old wire from the slot instead of clipping it Sawyer would not have been killed or injured.

"The jury by special verdict found:

"(1) That Watson was guilty of negligence in inserting the plug in the cut-out box.

"(2) That this was a proximate cause of the death of Sawyer.

"(3) That the defendant was guilty of negligence in failing to place a circuit breaker in the guy wire in proximity to the pole upon which Sawyer was working at the time of the accident.

"(4) That this was a proximate cause of the death of Sawyer.

"(5) That the defendant was guilty of negligence in that the guy wire attached to the pole upon which the deceased was working was in contact with a grounded wire.

"(6) That this was a proximate cause of the death of Sawyer.

"Special Issue A. That the deceased Sawyer was negligent on the occasion in question when he met his death.

"Special Issue B. That this negligence was not the sole proximate cause of his death.

"Special Issue A, requested by plaintiff: That shortly before the happening of the accident Watson cut in two an idle wire near where it entered the south side of the cut-out box, which was bolted to a cross-arm on the pole where he was at work, leaving a part of said wire in the cut-out box.

"Special Issue B, requested by plaintiff: That this act was negligence on Watson's part.

"Special Issue C, requested by plaintiff: That this negligence was a proximate cause of the death of Sawyer.

"Special Issue 4a, requested by defendant: That the deceased Sawyer, when he connected the primary lead wire from the newly installed transformer to the metal cut-out box failed to remove from the cut-out box the primary wire, but left the old primary wire extending out from the cut-out box.

"Special Issue 4b, requested by defendant: That this failure of the deceased Sawyer to remove the old wire was negligence.

"Special Issue 4c: That this negligence was not the sole proximate cause of Sawyer's death.

"Special Issue 7, requested by defendant: That the injury which Sawyer sustained and from which he met his death was not the result of mere accident which could not be reasonably foreseen or anticipated by the defendant by the use of ordinary care.

"The jury found damages in favor of the plaintiffs, for Ethel Sawyer in the sum of $10,-500 and Orville Sawyer, a minor, in the sum of $3,500. Judgment was entered upon this verdict, and the defendant El Paso Electric Company's motion for a new trial having been overruled, it has perfected its appeal to this court."

### Appellant's Propositions.

I. "The failure of Sawyer to remove the old primary lead from the slot in the cut-out box, as it was his duty to do, was negligence, as found by the jury. Had he removed the old primary lead from the slot when he inserted the end of the new primary lead, he would not have been injured. The plaintiffs therefore cannot recover."

II. "The clipping by Watson of the old primary lead up close to the cut-out box was not an intervening or independent cause, and in no way broke the causal connection between the original negligence of Sawyer in leaving the old primary wire in the slot and the shock which he received by reason of its being there, although it had been shortened by Watson by being cut close to the cut-out box."

III. "The deceased, Sawyer, owed the duty to the company not to negligently bring about a condition dangerous to himself or to his fellow employees. This duty he failed to discharge. Had he not failed in this duty to the company, but removed the wire from the cut-out box, he would not have been injured. Therefore, his injury was not proximately caused by the company's negligence, but proximately caused by his own."

IV. "The plaintiffs were not entitled to a judgment on the verdict of the jury, because the jury found that the defendant was negligent in inserting the plug in the cut-out box, in failing to place a circuit breaker in the guy wire, in allowing the guy wire to be in contact with a grounded wire, in cutting the wire left by Sawyer in the cut-out box, that each of these was a proximate cause of Sawyer's death, and that Sawyer was negligent in not having removed the old wire from the cut-out box, but that while this negligence was not the sole proximate cause, it was a proximate cause, the un-

disputed evidence showing that it was the last named that set the others in motion."

V. "The insertion of the plug in the cut-out box by Watson cannot be regarded as an intervening cause, for the evidence shows that Sawyer and Watson were there together to do this particular work, that is to say, to install the new transformer in lieu of the old one, connect it up with the cut-out box, and then turn on the power for the purpose of testing the machinery in an adjoining factory. The court should have submitted the defenses in its general charge or in supplemental instructions, and, having failed to do so, erred in refusing to submit to the jury defendant's special issue No. 2."

VI. "The court erred in refusing to submit to the jury defendant's special issue No. 4 in the form requested, and in inserting therein the word 'sole' over defendant's objections before giving it to the jury, for the reason that defendant was entitled to have a finding from the jury as to whether or not the deceased's negligence in leaving the old wire in the cut-out box was the proximate cause of his death."

VII. "The court erred in refusing to submit the issue of assumed risk. The court, having failed in the main charge to submit the issue of assumed risk which was raised by the pleadings and evidence, should have submitted the defendant's special issue upon that subject."

VIII. "The court, having failed to submit affirmatively in his charge the issues made by the pleading and evidence of the deceased Sawyer's negligence, and this having proximately caused his death, erred in refusing to give the defendant's special issues embodied in charge No. 16; for the defendant had a right to have an affirmative finding as to whether or not the deceased acted in a negligent manner in these respects and whether such negligence was the proximate cause of his injury and death."

IX. "The defendant was entitled to have a finding from the jury as to whether the shock or shocks received by Sawyer before he fell upon the guy wire were sufficient to kill him, and did result in his death, for this had a material bearing upon the question as to whether Sawyer's death was in fact caused by his negligent failure to remove the old wire from the cut-out box, or to the negligence of the defendant company in permitting the contact between the guy wire and grounded wire and in failing to maintain a circuit breaker in the proper place, and, the court having failed to submit this issue to the jury, should have submitted the defendant's special issue numbered 13 or 14."

X. "The court erred, as shown by defendant's bill of exceptions No. 5, in telling the jury that the term 'occasion' as used in supplemental issue A submitted to them, comprehended the entire transaction with reference to the performance of the entire work on or about the pole in question on which the deceased was engaged at and before the time of his death. This charge was upon the weight of the evidence, and unduly emphasized the matters submitted in supplemental issue No. A."

XI. "The defendant was entitled to have the issue passed upon by the jury as to whether Sawyer's failure to obey the rules of the defendant company, pleaded and proved, was negligence, and whether this negligence proximately caused his death, and the court erred in refusing the defendant's special charge found on page 46 of the transcript submitting that question and hereinafter set out."

XII. "The court's method of submitting the issue of negligence of the deceased Sawyer's failure to remove the wire being the proximate cause of his death, was erroneous and ineffective in the following respects: The jury having been asked by the court, 'Was the failure of the deceased, Sawyer, to remove said wire negligence on his part?' and answered, 'Yes,' was not then asked by the court whether this was the proximate cause of Sawyer's injury or death, but was asked, 'Was such negligence the sole proximate cause of Sawyer's death?' and answered, 'No.' The court's method of putting the second question rendered the answer to the first abortive. The court neither asked whether the negligence of Sawyer was the proximate cause or a proximate cause. The court thus cut the defendant off from a finding by the jury upon the question of the deceased's negligence having proximately caused his death or proximately contributed thereto."

Appellant was engaged in furnishing to the public electricity for the purchase of power, light, etc.

Defendant's special issue No. 2 reads:

"Should the deceased, Sawyer, have foreseen that as a result of his failure to remove the old wire from the cut-out box an injury, or injuries, of a similar character to that which happened to him, would probably result to himself or to some other person? Answer yes or no."

Defendant's issue 4c, as requested, reads:

"Was such negligence the proximate cause of Sawyer's death? Answer yes or no."

The court modified same by inserting "sole" before "proximate," and submitted the same as modified.

The defendant's issue referred to in its seventh proposition reads:

"An employee assumes the risk and dangers ordinarily incident to the work in which he is engaged, but he does not assume any risk growing out of the negligence of the employer. With this distinction in view you will please answer the following: No. 19: Do you find from a preponderance of the evidence that the deceased, A. P. Sawyer, met his death as the proximate result of a risk or danger ordinarily incident to the kind and class of work that he was engaged in at the time of the injury to the consequent death of the said Sawyer?"

Charge No. 16 referred to in its eighth proposition reads:

"No. 16: Do you find from a preponderance of the evidence that the deceased, A. P. Sawyer, was negligent, as that term has been defined to you, in causing or permitting his left knee to come in contact with the fuse or cut-out box, if he did cause or permit it so to come in contact with same? Answer yes or no. (Refused.)

"If you have answered the above question 'Yes,' then please answer the following: No. 17: Was such negligence proximate cause of the injury to and consequent death of A. P. Sawyer? Answer yes or no."

Issues 13 and 14 referred to in the ninth proposition read:

"Was the shock or shocks, if more than one, received by Sawyer before he fell upon the guy wire, probably great enough to kill him? Answer yes or no."

And then its special issue No. 14, as follows: '

"Gentlemen of the jury, you will answer the following interrogatory: Was the shock, or shocks, if more than one, received by Sawyer before he fell upon the guy wire, great enough to kill him? Answer yes or no."

After the jury retired it came into open court and propounded this question:

"What is meant by the term 'occasion' in supplemental issue A? Are we limited to acts of Sawyer immediately before he came into contact with the wire resulting in his death, or are we to consider everything that occurred during the time that he was working on the pole?"

To which the court replied in writing:

' "The term 'occasion' as used in supplemental issue A comprehends the entire transaction with reference to the performance of the entire work, on or about the pole in question, in which deceased was engaged at and before the time of his death."

This is the matter referred to in the tenth proposition.

The charge referred to in the eleventh proposition reads:

"Did the deceased, Sawyer, fail to obey the rule of the company in evidence before you which reads as follows: 19. 'Any employee when working on live lines or equipment shall always avoid touching ground wires, guy wires, span wires, metal sheaths, metal poles, telephone and signal lines or equipment, cross-arm braces and bolts, transformer cases, hangers, switchboard frame work, steel tower structures or any other metal object or fixtures.' Answer yes or no. If you have answered the foregoing interrogatory 'Yes,' then answer this question: Was his failure to obey said rule of the company negligence on his part? Answer yes or no."

[1] Disposing of the above propositions, we adopt as our opinion quotations from appellee's brief, as follows:

"Answer to propositions first, second, third, and fourth:

"The jury having found that defendant was negligent in four particulars, to wit, (1) inserting the plug into the cut-out box, thus electrifying the wires in close proximity to where the deceased was at work upon the pole; (2) leaving an exposed live wire in the cut-out box close to where deceased was at work so that it was easy for him to come in contact therewith; (3) maintaining the guy wire without a circuit breaker; (4) maintaining the guy wire in contact with a live electric wire—and that each of such negligent acts was the proximate cause of Sawyer's death, made the defendant liable under the statutes of Texas, even though deceased was guilty of contributory negligence in not removing the idle wire protruding from the cut-out box. R. S. art. 8306." Eastern Texas Electric Co. v. Woods (Tex. Civ. App.) 230 S. W. 498.

"Argument.

[2, 3] "The testimony of defendant's witness, George Blessing, who took down and examined the particular cut-out box in question several months after the injury, testified to facts tending to show that this idle wire served the purpose of making a better contact with the new wire running from the cut-out box to the transformer that was substituted when the new transformer was installed; the old wire being left in because the set screw in the cut-out box is so constructed as that a perfect contact could not be made with such a small or flat wire or wires. But if it be conceded that the idle wire served no purpose whatever and that the deceased was negligent in not taking the same out of the cut-out box entirely when the new wire and transformer connected therewith were installed, yet the idle wire was wholly harmless so long as the plug was not inserted in the cut-out box. In any event such negligence of the deceased could only be one of the proximate causes of his death, and the defendant, being negligent and such negligence being a proximate cause of the death, is liable, and the negligence of the deceased is not a defense under the statute. The negligence of the deceased, it could also be said, was remote in time and might also be held as remote in effect as compared with the subsequent negligence of defendant's employee, Watson, as found by the jury in cutting off the idle wire close to the cut-out box and leaving the remaining end thereof raw and exposed and largely in a concealed condition, and then inserting the plug in the cut-out box, electrifying this exposed end of the wire, while deceased was at work near to this dangerous place with his attention directed to other matters so that he was liable to come in contact with the exposed electrified wire unconsciously. That there may be several acts of negligence, each of which is a proximate cause of the injury, and that it is ordinarily a question of fact as to what negligent act is a proximate cause of an injury, are propositions too well settled to require citation of authorities. Attention is also called that while the deceased left the extra or idle wire in the cut-out box, yet this wire was all insulated except immediately at the end where it entered the cut-out box; and, being perfectly visible and hanging away at a distance, there was very little danger of it causing any injury to an employee, because he could well protect himself against the same; while the act of Watson in cutting this wire off close up to the cut-out box and leaving the raw end exposed where the person of an employee might come in contact therewith, and it being such a small piece of wire in this semi-concealed condition made it a latent and therefore much more dangerous and deadly agency than the idle wire was in its original condition.

[4-6] "With reference to the negligence of the defendant in not having a circuit breaker in the guy wire and in maintaining the guy wire in contact with a live wire, we would answer first that even if the deceased knew of the absence of the circuit breaker, such fact would not be a defense, because under the statute both assumed risk and contributory negligence as defenses which existed at the common law have been abolished. But even at common law it

would not be a defense, for the original negligence was that of the defendant in constructing this guy wire in such negligent manner. Therefore, as a matter of law, the defendant knew of its own negligent acts of construction, and with such knowledge directed the deceased to work about the dangerous place where such negligence might cause his death. Therefore, even at common law, where the defendant put an employee to work at a dangerous place caused by the defendant's own negligent construction, the defendant is liable, because Sawyer did not know and had no reason to believe that the guy wire was grounded—in contact with a live wire. It was an issue of fact whether Sawyer knew Watson had cut the wire and left a raw end protruding from the cut-out box, so it should be presumed that this issue, if material, was found against defendant.

[7] "Answer to fifth proposition, Br. 8, complaining of the refusal of defendant's issue No. 2, Br. 22: The question asked, no matter which way it might have been answered, could have had no controlling effect. Besides, such question was covered by defendant's question 4a and 4b upon the same subject and the finding of the jury thereon that the deceased was negligent in failing to remove the old wire from the cut-out box, but that this negligence was not the sole proximate cause of the injury.

[8] "Answer to sixth proposition, Br. 8, complaining of the refusal to submit the question of whether deceased's negligence was the proximate cause of his death, and of the action of the trial judge in modifying the question as to require a finding whether deceased's negligence was the sole proximate cause of his death, Br. 25, we say: (1) In law, 'the proximate cause' and 'the sole proximate cause' mean the same thing, and it was proper for the judge to insert the word 'sole' in the question to avoid confusing the jury and so that they might certainly understand the meaning of the question. (2) There being evidence to show negligence on the part of defendant and that same was a proximate cause of the injury, it was not proper to ask the jury whether the negligence of the deceased was the proximate cause of the injury, at least not without making the question plain as to whether the jury were asked if such negligence was 'a proximate cause' or 'the sole proximate cause'; because proximate cause would not constitute a defense under the statute. While the sole proximate cause, if that were Sawyer's negligence, would constitute a defense under the statute, and yet the term 'the proximate cause' might have been misunderstood by the jury, who might not have distinguished between 'a proximate cause' and 'the proximate cause,' without the word 'sole' being in the last expression.

[9, 10] "Answer to seventh proposition, Br. 9, on assumed risk, refusing defendant's charge No. 19, Br. 28: (1) The defense of assumed risk having been abolished by statute was not an issue in the case. Authorities cited supra, p. 1. (3) The charge in question could not have been answered in defendant's favor without contradicting the jury's answers to all four of the grounds of negligence of defendant submitted in the court's charge. It is not ordinarily necessary or proper to submit to the jury 'questions which invite' contradictory answers. The jury having answered that defendant was negligent and that the same was a proximate cause

of the injury, defendant is liable, and assumed risk is no defense. Really there could not have been assumed risk if the defendant was negligent, which proposition is admitted by defendant's requested charge.

[11, 12] "Answer to eighth proposition, Br. 9, 29: (1) Under the statute the negligence of the deceased was not a defense, and therefore the court was not required to submit same. (2) The charge, as drawn, was obscure in its meaning to the jury as to whether the issue of negligence raised was merely a proximate cause or was the sole proximate cause, was rightfully refused for such reason, especially as it was not plain to the jury what was meant thereby, the court does not have to give a charge or question that is not clear or is liable to confuse nor one that requires a further definition or explanation.

[13-16] "Answer to ninth proposition, Br. 9, 30: * * * (2) The jury having found negligence of the defendant (1) in the act of its servant, Watson, inserting the plug in the cut-out box, (2) and in leaving the exposed end of a wire in the cut-out box, and that these acts of negligence were proximate causes of the death, in that the deceased thereby received a severe shock before he fell on to the guy wire, it is immaterial whether such first shock or shocks were either sufficient to cause or did cause the death. (3) Even if it were material whether the shock or shocks received before falling on the guy wire caused Sawyer's death, yet the requested issues do not ask for a finding upon such fact, but only ask if such shock was great enough to cause or probably did cause the death —not whether the death was in fact so caused. Such matters were only evidentiary, and did not cover a finding or request to find upon the ultimate issue of whether such shock did in fact cause his death. (4) The evidence did not authorize a finding that such prior shock or shocks alone and solely caused the death. Where it is uncertain as to whether one of two or more wrongful acts caused a death, and each are inflicted upon the victim while he is still alive, the law makes each wrong or wrongdoer liable, unless possibly it could be shown with absolute certainty that the first stroke or wrong wholly caused the death.

"Statement.

"The testimony shows very plainly that Sawyer was still alive after he received the first shock and after he had fallen clear of the secondary wire which made the first contact, and even after he was lying upon the guy wire and through this means had again received and was receiving electric current. Watson testified that while Sawyer was lying upon the guy wire he was twisting, floundering, and throwing his arms about, thus interfering with Watson's efforts to rescue him, and even Watson spoke to him and tried to get him quiet so that he could better remove him from the guy wire. Even some two or three minutes after he received the shock and when his body was finally gotten to the ground, witness Jackson testified that he breathed at least once.

"The witness Shaklee testified that he was an experienced electrician of many years, and had had experience in such electric shocks, and that ordinarily it did not cause death where it was of very short duration, and as applied to this case, after Sawyer received the shock through the secondary wire from which he was separat-

ed almost instantly, that would not ordinarily cause his death, but that when Sawyer fell on the guy wire in contact with which he remained for several seconds, thus receiving a continuous current through his body for some length of time, would ordinarily produce death.

[17, 18] "Answer to tenth proposition, Br. 10, 31: (1) The charge of the court defining the term 'occasion' was correct. (3) The charge was favorable to the defendant, and, therefore, in no event could defendant complain thereof.

[19] "Answer to eleventh proposition, Br. 10, 32: (3) Even if Sawyer was negligent in the things asked about it would not be a defense under the statute, since the defendant was also negligent, which proximately contributed to the injury.

[20] "Answer to twelfth proposition, Br. 11, 33: * * * (2) The undisputed evidence showing that Watson inserted the plug in the cut-out box upon the order of defendant's foreman, Jump, and that wires were all dead and harmless until such insertion was made, and Watson knowing that he had cut the idle wire and left it exposed and protruding from the cut-out box, which necessarily became charged by the insertion of the plug, made the act of Watson inserting the plug negligence and a proximate cause of the injury, which rendered the former negligence of Sawyer in leaving the idle wire hanging down for a length of two feet, but which was covered with insulation and then uncharged and harmless at the time, a remote cause of the injury, or in any event, not more than a concurring cause with the negligence of Watson in causing the injury, which under the statute is not a defense."

Affirmed.